UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
ALI AKHTAR,

                Petitioner,

     -against-

PAUL ANNETTS, Superintendent,
Downstate Correctional Facility, and
ELIOT L. SPITZER, Attorney General,
New York,

                Respondents.
-------------------------------------------------------x

**MEMORANDUM & ORDER**
Case No. 05-CV-3663 (FB)

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ SEP 13 2007 ★
P.M.
TIME A.M.

*Appearances:*
*For the Petitioner:*
BRENDAN WHITE, ESQ.
White & White
148 East 78th Street
New York, NY 10021

*For the Respondent:*
CHARLES HYNES, ESQ.
District Attorney, Kings County
By: SHOLOM TWERSKY, ESQ.
Assistant District Attorney
350 Jay Street
Brooklyn, NY 11201

**BLOCK, Senior District Judge:**

      Petitioner, Ali Akhtar ("Akhtar"), is currently in custody pursuant to a judgment of the New York Supreme Court, Kings County ("the trial court"). Pursuant to 28 U.S.C. § 2254, he seeks a writ of *habeas corpus*, arguing, *inter alia*, that his due-process rights were violated when the trial court refused to allow him to withdraw a prior guilty plea. For the reasons stated below, the petition is denied.

I.

      On January 5, 1997, Akhtar – along with Michael Payne ("Payne") and Shomen Siddiky ("Siddiky"), who are not parties to this *habeas* proceeding – was arrested

at the scene of a robbery at a social club in Brooklyn; all three were subsequently indicted on numerous charges of robbery, attempted robbery, assault and weapons possession. Jay Cohen ("Cohen") was appointed to represent both Akhtar and Siddiky; Payne was represented by separate counsel.

On January 28, 1997, all three defendants pleaded not guilty; Akhtar and Siddiky were released on bail. Cohen continued to represent both Akhtar and Siddiky at various court appearances and in plea negotiations, during which the prosecution insisted that they plead guilty to the full indictment in exchange for total sentences of seven-and-a-half to 15 years.

On June 5, 1997, the trial court conducted a joint plea proceeding. Rejecting the prosecution's position, the judge agreed to accept from each defendant a plea of guilty on two counts of robbery and one count of weapons possession in satisfaction of the full indictment; the judge also offered more lenient sentences: "I promised your attorneys to sentence you to a period of imprisonment of four to eight years on each count, to run concurrently. That means at the same time." Pet., Ex. N (Tr. of Proceedings held June 5, 1997) at 9-10. The judge further advised the defendants that "[i]f I cannot give you that sentence in good conscience, I will allow to you [sic] withdraw your pleas and reinstate your not guilty pleas." Id. at 10. The judge accepted guilty pleas from all three defendants and scheduled sentencing for July 17, 1997.

At the conclusion of the proceeding, Cohen asked the court to release Akhtar and Siddiky from bail:

| MR. COHEN: | I ask you, in light of the extreme exposure if they don't come back to court, 32 and a half to 65 years in prison, I would ask you to consider exonerating the bail in this case. |
|---|---|
| THE COURT: | Well, I have advised each defendant [that] there are three things you have to do that cause me to keep my promise: One, to report on the day of sentence at 9:30 in the morning. . . . Two, each of you not to be arrested for any crime whatsoever. I don't care about the outcome of the case. That will enable me to disregard my promise and impose the maximum under the law. Three, cooperate with the Probation Department, because I want a full and complete probation report. If you fail to do any of those three, I am not bound to keep my promise, and I can sentence you to the maximum under the provisions of the law. And certainly that means 32 to 65, or some number in that range. |
| | All right. I will exonerate the bail and parole the two defendants who have already been out. |
| | Be here on the 17th. |
| MR. AKHTAR: | Yes. |

*Id.* at 23-24.

Akhtar did not appear at the July 17th sentencing; after spending more than five years abroad, he returned to the United States and was arrested. Through new counsel, he moved to withdraw his plea and proceed to trial. When the trial court denied that motion, he then asked the court to impose the previously promised sentence of four

3

to eight years; the court refused that request on the ground that Akhtar had "violated his promise to me by saying he would come back [for sentencing] and instead . . . went to Europe," Pet., Ex. R (Tr. of Proceedings held Sept. 5, 2002), and sentenced Akhtar to eight to 16 years on each robbery count and to seven and one-half to 15 years on the weapons possession count, all to run concurrently.

Akhtar appealed, arguing, *inter alia*, that the trial court violated due process by not allowing him to withdraw his plea.[1] The Appellate Division, Second Department, affirmed the conviction and sentence; with respect to Akhtar's due-process claim, it held:

> Taken as a whole, the record indicates the clear intent of the Court to condition the promised sentence upon the defendant's appearance on the date scheduled for sentencing. In fact, in support of a successful motion to exonerate bail made at the conclusion of the plea proceedings, defense counsel expressly pointed to the "extreme exposure [the defendant would face] if [he didn't] come back to court" as a guarantee that the defendant would in fact appear at sentencing as scheduled. Under these circumstances, there is no basis upon which to infer that the defendant might have misconstrued the meaning of the Supreme Court's warning. Thus, the Supreme Court had the right to impose the enhanced sentence after the defendant absconded, without permitting him the option of withdrawing his plea.

*People v. Akhtar*, 786 N.Y.S.2d 549, 550 (2d Dep't 2004) (citations omitted).

On January 25, 2005, the New York Court of Appeals denied leave to appeal, *see People v. Akhtar*, 4 N.Y.3d 760 (2005); Akhtar did not petition the United States Supreme Court for a writ of *certiorari*. On August 3, 2005, he timely instituted the present

---

[1] Akhtar simultaneously raised the same claim in a motion to vacate judgment pursuant to §§ 440.10 and 440.20 of the New York Criminal Procedure Law; the trial court denied that motion.

*habeas* proceeding.

## II.

Akhtar argues that the trial court violated due process because, as he claims, "the state court failed to give [him] the opportunity to withdraw his guilty plea prior to this court's imposing a higher than promised sentence, after the court had expressly promised that [he] would be permitted to withdraw his plea [if he violated the conditions of his plea agreement.]" Pet.'s Mem. of Law at 1. Because this claim was "fairly presented to the appropriate state appellate court," *Jackson v. Edwards*, 404 F.3d 612, 618 (2d Cir. 2005) (citation and internal quotation marks omitted), and "adjudicated on the merits," *Sellan v. Kuhlman*, 261 F.3d 303, 312 (2d Cir. 2001), it is meet for *habeas* review.[2]

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which governs Akhtar's claim, *habeas* relief may not be granted on claims rejected on the merits by a state court unless the state court decision (1) was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or (2) was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Id.* § 2254(d)(2).

A state court decision is "contrary to" clearly established federal law "if the state court applies a rule that contradicts the governing law set forth" in Supreme Court

---

[2]In his *habeas* petition, Akhtar also argued that Cohen's joint representation of him and Siddiky amounted to ineffective assistance of counsel. *See* Pet.'s Mem. of Law at 23. That claim was also exhausted and adjudicated on the merits; however, it was withdrawn at oral argument. *See* Tr. of Nov. 20, 2006, at 18.

5

precedent or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives" at a different conclusion. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). A state court decision involves an "unreasonable application" of clearly established federal law if it unreasonably applies Supreme Court precedent to the particular facts of a case. *See id.* at 409. This latter inquiry requires a court to ask, not whether the state court's decision was erroneous, but "whether the state court's application of clearly established federal law was *objectively unreasonable.*" *Id.* (emphasis added). "While the precise method for distinguishing objectively unreasonable decisions from merely erroneous ones is somewhat unclear, it is well-established in this Circuit that the objectively unreasonable standard . . . means that [the] petitioner must identify some increment of incorrectness beyond error in order to obtain *habeas* relief." *Sorto v. Herbert*, ___ F.3d ___, 2007 WL 2283080, at *3 (2d Cir. Aug. 10, 2007) (citations and internal quotation marks omitted).

The phrase "clearly established Federal law" refers to the holdings of the Supreme Court. *See Williams*, 529 U.S. at 412. As the Second Circuit has recently reiterated, "[n]o principle of constitutional law grounded solely in the holdings of the various courts of appeals or even in the dicta of the Supreme Court can provide the basis for *habeas* relief." *Rodriguez v. Miller*, ___ F.3d ___, 2007 WL 2445120, at *3 (2d Cir. Aug. 29, 2007). Moreover, the Supreme Court's recent decision in *Carey v. Musladin*, 127 S. Ct. 649 (2006), "admonishes courts to read the Supreme Court's holdings narrowly and to disregard as dicta for *habeas* purposes much of the underlying logic and rationale of the high court's decisions." *Rodriguez*, ___ F.3d at ___, 2007 WL 2445120, at *3.

6

## III.

*Brady v. United States*, 397 U.S. 742 (1970), and *Santobello v. New York*, 404 U.S. 257 (1971), govern Akhtar's claim. In *Brady*, the Supreme Court held that "[w]aivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences." 397 U.S. at 748. *Santobello* requires that "when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, [due process requires that] such promise must be fulfilled" or the defendant must be given "the opportunity to withdraw his plea of guilty." 404 U.S. at 262-63.

Akhtar wisely does not argue that he was not aware that the promised sentence of four to eight years would be vitiated by his failure to appear at sentencing; in light of the trial court's explicit warnings at the conclusion of the plea proceeding, such an argument would be untenable. Instead, he argues that the trial court's statement that "[i]f I cannot give you that sentence in good conscience, I will allow to you [sic] withdraw your pleas and reinstate your not guilty pleas," Pet., Ex. N at 10, amounted to an unambiguous promise to allow him to withdraw his guilty plea if he did not appear.

In support of his argument, Akhtar relies heavily on *Innes v. Dalsheim*, 864 F.2d 974 (2d Cir. 1988), in which the Second Circuit granted *habeas* relief to a petitioner who had violated a "no-arrest" condition in his plea agreement because the state trial court had not "straightforwardly t[old] the defendant that his guilty plea could not be withdrawn." *Id.* at 979. Indeed, Akhtar insists that the facts here "are even more compelling [than those in *Innes*] because the state court here failed to keep an *express promise*." Pet.'s Mem. of Law

7

at 15 (emphasis in original). Akhtar's reliance on *Innes* is, however, misplaced in light of the Second Circuit's subsequent decision in *Mask v. McGinnis*, 252 F.3d 85 (2d Cir. 2001).

In *Mask*, the trial court had deferred sentence to give the defendant the opportunity to "prove . . . that [he] should not go to state prison." *Id.* at 87. In so doing, it had explicitly imposed certain rehabilitation programs as conditions of release; the trial court further warned the defendant that he should "not walk out of here with the idea that it will be only one-and-a-half to four-and-a-half years that you will get if you violate the conditions," and that he should "[t]hink five to fifteen." *Id.* When the defendant was arrested for another crime, the trial court sentenced him to an enhanced term of five to 15 years without permitting him to withdraw his guilty plea. The Appellate Division affirmed the sentence, holding that the trial court's warning "put defendant on notice that the commission of further crimes would result in a harsher sentence." *Id.* at 89 (quoting *People v. Mask*, 642 N.Y.S.2d 270, 271 (1st Dep't 1996)).

The defendant then sought *habeas* relief on the ground that "the trial court's enhanced sentence would be justified only if the plea agreement unambiguously implied a no-arrest condition." *Id.* at 89 (internal quotation marks omitted). The circuit court denied the *habeas* petition, reasoning that the failure of the plea agreement to explicitly and unambiguously provide a "no-arrest" condition would not vitiate the state courts' holding that the enhanced sentence was warranted since "[n]o rational person could believe that a new crime would prove that [the defendant] should not go to state prison,"*id.*; therefore, it held that it was reasonable for the Appellate Division to conclude that the defendant was on notice of the consequences of violating the "no-arrest" condition. *See id.* at 90-91

8

("[E]ven assuming that we disagreed with the state courts' conclusion that the proof condition was sufficiently clear to put petitioner on notice that he would get the maximum sentence if he committed additional crimes, we would find that this error did not rise to the requisite level of 'objective[ ] unreasonable[ness].'" (quoting *Williams*, 529 U.S. at 409)).

In so holding, the circuit court rejected the defendant's contention that it was bound by *Innes*, which he had characterized as holding that "federal due process require[s] a state trial court to unambiguously inform the defendant at the time of a guilty plea about the consequences of breaching a condition of a plea bargain before those consequences can be enforced unilaterally." *Id.* at 90. The court noted that "neither *Brady* nor *Santobello* – nor any other Supreme Court opinion for that matter – holds, as petitioner intimates, that federal due process requires that all conditions placed on a sentence promised in a plea bargain be communicated to the defendant unambiguously," *id.* at 89-90; therefore, even assuming that *Innes* had held that a plea agreement must be unambiguous, under AEDPA a petitioner would be entitled to habeas relief "only upon a showing that the state courts unreasonably applied clearly established *Supreme Court* precedent." *Id.*

Like the petitioner in *Mask*, Akhtar offers a strained interpretation of the trial court's explanation of the conditions of his plea agreement; he argues, in essence, that when the trial court said it would allow him to withdraw his plea if it could not give him the promised sentence "in good conscience," it meant that he would be allowed to withdraw his plea if the promised sentence were unavailable for any reason, including Akhtar's disregard of the conditions attendant on the sentence. Under a far more natural reading, however, the statement was a promise to allow Akhtar to withdraw his plea if

9

circumstances beyond his control – for example, the discovery of a prior conviction that would result in a sentence below the statutory minimum – prevented the trial court from imposing the promised sentence. In short, no rational person could believe that he or she was free to flee the country and then, five years later, put the prosecution to its burden of proof.

Even if one were to construe the trial court's "in good conscience" statement as being susceptible of more than one interpretation, AEDPA's deferential standard of review would preclude *habeas* relief because there has been no showing that the Appellate Division unreasonably applied Supreme Court precedent. As *Mask* makes clear, neither *Brady* nor *Santobello* requires that all conditions of a plea agreement be communicated expressly and unambiguously; accordingly, it would not be an unreasonable application of *Brady* or *Santobello* to reject Akhtar's strained interpretation of the trial court's statement in favor of a more natural one. While, as Akhtar points out, the appellate court did not expressly address the statement, the clear import of its holding was that Akhtar understood that failure to appear at sentencing could result in an enhanced sentence without the option of withdrawing his guilty plea; in any event, it is the *result* reached by the Appellate Division, and not its *reasoning*, that is the proper subject of *habeas* review. *See Cruz v. Miller*, 255 F.3d 77, 86 (2d Cir. 2001) ("Although sound reasoning will enhance the likelihood that a state court's ruling will be determined to be a reasonable application of Supreme Court law, deficient reasoning will not preclude AEDPA deference, at least in the absence of an analysis so flawed as to undermine confidence that the constitutional claim

has been fairly adjudicated." (citations and internal quotation marks omitted)).³

**IV.**

Akhtar's *habeas* petition is denied. Because he has failed to make a substantial showing of the denial of a federal right, a certificate of appealability will not issue. *See* 28 U.S.C. § 2253

**SO ORDERED.**

S/Frederick Block, USDJ

FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
September 11, 2007

---

³A year after *Cruz* was decided, the Supreme Court commented in *dicta* that AEDPA "does not require citation of our cases – indeed, it does not even require awareness of our cases, so long as *neither the reasoning nor the result* of the state-court decision contradicts them," *Early v. Packer*, 537 U.S. 3, 8 (2002) (emphasis added); however, courts have not read *Early* to mean that deficient reasoning, standing alone, warrants *habeas* relief. *See, e.g., Sims v. Rowland*, 414 F.3d 1148, 1152 n. 2 (9th Cir.2005) ("To our knowledge, the Supreme Court has never granted habeas relief solely on the basis of the 'reasoning' used by the state court."). Thus, the Second Circuit continues to cite *Cruz* as good law. *See Cotto v. Herbert*, 331 F.3d 217, 248 (2d Cir. 2003).